THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* HÉCTOR R. TORRES, Defendant and Appellant.

No. 9083. Argued February 20, 1942.—Decided March 11, 1942.

R. *Muñoz Ramos* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

Héctor R. Torres was charged in the District Court of Ponce with a violation of Act No. 63, to prohibit the sale, storage, or transportation of adulterated, misbranded, poisonous, or deleterious foods, and drugs or medicines, and for other purposes, approved April 28, 1931 (Laws of 1931, p. 414). Said court found him guilty and sentenced him to pay a fine of $25 and, in default of such payment, to be confined in jail one day for each dollar left unpaid, with costs. He has taken an appeal to this court, urging that the lower court erred in dismissing a demurrer for insufficiency of the complaint, in finding that the law and the facts were against the defendant, and in sentencing the latter as above stated.

The information filed in this case reads as follows:

"The district attorney brings this information against Héctor R. Torres for the offense of violating Act No. 63, approved April 28, 1931 (a misdemeanor), committed in the following manner.

"The said defendant, on or about September 22, 1937, in the town of Adjuntas, which forms part of the judicial district of Ponce, P. R., did wilfully and unlawfully keep adulterated lime water for the purpose of sale, such adulteration consisting in the fact that said drug, which bears the name recognized in the United States Pharmacopoeia, differed at the time of the investigation in this case from the standard of strength, quality, or purity determined in the United States Pharmacopoeia, inasmuch as said lime water instead of containing 0.14 grm. in 100 c.c. at 25 C. as required by the test laid down in said official formulary, contained only 0.0834 grm. Ca (OH) 2 in 100 c.c., without such fact or standard being plainly stated on the label of the container where the accused kept said article."

Sections 2($a$)(1) and 4 of Act No. 63 of 1931 provide as follows:

"Section 2.—For the purposes of this Act, an article shall be deemed to be adulterated—

"($a$) In case of drugs:

(1) If, when a drug is sold under or by a name recognized in the United States Pharmacopoeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in the United States Pharmacopoeia or National Formulary official at the time of investigation; *Provided,* That no drug defined in the United States Pharmacopoeia or National Formularly shall be deemed to be adulterated *if another standard is plainly stated on the label thereof, although said standard may differ from that determined in the United States Pharmacopoeia or National Formulary.* (Italics ours.)

"   *       *       *       *       *       *       *

"Section 4.—Any person who shall manufacture, sell, or offer or have for sale, or who shall transport or store any article of food or drugs which is adulterated or misbranded, within the meaning of this Act, shall be guilty of a misdemeanor and punishable by a fine of not less than twenty-five (25) nor more than one hundred (100) dollars; *Provided,* That a second offense shall carry with it the revocation of the license.

"In all cases of violation of the provisions of this Act, the district courts of Porto Rico shall have original jurisdiction to take cognizance of such violations."

A reading of the information in the light of the language of those sections clearly shows the frivolousness of the first error assigned. What the statute provides, as far as drugs are concerned, is that a drug shall be deemed to be adulterated if, when the same is sold under or by a name recognized in the United States Pharmacopoeia or National Formulary, it differs from the standard of strength, quality, or purity, as determined by the test laid down in said formulary; but that if another standard is plainly stated on the label thereof which differs from that stated in said formulary, said drug shall not be deemed to be adulterated. Therefore, when charging the accused with keeping adulterated

lime water for the purpose of sale, which article is one of the drugs recognized in the United States Pharmacopoeia, and which differed at the time of the investigation from the standard of strength, quality, or purity determined in said pharmacopoeia, and setting forth facts which constituted such difference, the information sufficiently stated the offense in question, as has been held by us in *People* v. *Marín,* 54 P.R.R. 620, and *People* v. *Ramos,* 56 P.R.R. 559, wherein the same statute was applied. Moreover, the information in the case at bar contains the additional averment, not found in the above-cited cases, that the difference in said standard was not stated on the label of the drug kept by the accused for sale. The first error assigned is nonexistent.

Regarding the second assignment, we have carefully considered the evidence introduced by the parties at the hearing of the case and our conclusion is that the same is sufficient to establish the facts alleged in the information. Both the preliminary analysis of one of the samples obtained from the accused and the test subsequently made in the presence of the expert designated by the accused, showed that the strength of the lime water was much lower than the standard laid down by the United States Pharmacopoeia, and that the accused kept said article for sale in his drug store. The fact that such degree of strength may have become lower due to the action of the carbon dioxide of the air on the lime water when uncorking the container every time said article was dispensed, or due to negligently leaving the container uncorked, as was shown, does not relieve the accused from liability. On the contrary, we agree with the lower court that the offense provided for in §§ 2 and 4 of Act No. 63 of 1931, is committed by keeping an adulterated drug for sale, and it is not an essential element therefor that there should be alleged or proved that the accused wilfully and maliciously adulterated it. We must assume that the defendant herein, a druggist, must have been acquainted

／

with the action of the carbon dioxide of the air on lime water. Notwithstanding this knowledge on his part he testified that when seized in his drug store the vessel containing the lime water was uncorked (p. 56, Tr. of Ev.) and that the container was sometimes uncorked, due to the fact that the boy whom he employed in his drug store was very careless. Whether by reason of carelessness or negligence or because in the preparation of the lime water the amount of lime used was not sufficient to impart to the drug the strength required by the pharmacopoeia, the evidence introduced supports the allegations of the information. What the statute seeks to accomplish is that when a drug is sold to the public, the latter should feel assured of buying an article which complies with the standard previously set up as necessary to produce the effects determined by the medical science. In the instant case, it was shown that lime water is used mainly for calcifying the bones of children suffering from rickets. Hence the importance that such article when offered for sale —although the cost of its preparation, as shown, be low and the element of speculation be absent from the transaction— should be pure and should conform to the standard of strength required by law.

The judgment appealed from must be affirmed.